**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRENDA S. DILLON,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:09-cv-896

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Brenda S. Dillon filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four closely related claims of error, all of which the Defendant disputes.  As explained below, I conclude that the finding of non-disability should be affirmed, because it is supported by substantial evidence in the administrative record.

**I.  Summary of Administrative Record**

On January 23, 2007, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of November 30, 2006, due a relatively lengthy list of diagnosed illnesses and claimed impairments.  Plaintiff's application states, for example, that she suffers from lupus, rheumatoid arthritis ("RA"), depression, and mild spine degeneration.  (Doc. 6 at 165).  In her application for reconsideration, Plaintiff additionally claims impairments related to asthma, "lack of attention ability," high blood pressure, "talk of a left knee replacement," and a "total lack of energy."  (Doc. 6-1

1

at 3). Plaintiff also complains of sleeplessness, acid reflux, ankle injury and drop foot, as well as bulging discs in her neck and carpal tunnel syndrome.

Plaintiff was 43 years old at the time of her alleged disability. (Doc. 6 at 14). She graduated from high school but dropped out of college as a sophomore. (*Id.* at 36). Plaintiff is 5' 11" and reported her weight at 228 pounds. (*Id.* at 164). She worked as a heavy equipment operator for more than 20 years, until November 2006.

After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. (*Id.* at 77). On January 23, 2009, an evidentiary hearing was held by video-conference, at which Plaintiff was represented by counsel. (*Id.* at 32-62). At the hearing, ALJ Geraldine Page heard testimony from Plaintiff and from Robert Jackson, a vocational expert.

On February 10, 2009, the ALJ entered her decision denying Plaintiff's DIB application (*Id.* at 30). The Appeals Council denied her request for review. Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the Title II insured status requirements of the [Social Security] Act on November 30, 2006, her alleged onset date of disability, and continued to meet them through at least the date of this decision.

2. The claimant has not engaged in substantial gainful activity at any time during the period of November 30, 2006, through at least the date of the hearing.

3. The claimant has medically determinable severe impairments as set forth in the body of this decision.

4. The claimant's impairments, considered either singularly or in combination, do not meet or equal in severity the criteria of any

impairment found in the Listing of Impairments at Appendix 1, Subpart P, Regulations Part 404.

5.    The claimant's testimony and subjective complaints with respect to her symptoms and alleged limitations are found to be partially credible for the reasons set forth in the body of this decision.

6.    Beginning November 30, 2006, through at least the date of this decision, the claimant has retained the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. She can stand and/or walk up to six hours in an eight hour workday, and sit for up to six hours. Her ability for pushing/pulling with the lower extremities is limited to the above weight restrictions. She can occasionally climb, balance, kneel, crouch, crawl, and stoop, but should avoid exposure to extreme temperatures, excess irritants and pollutants, unprotected heights, vibrating surfaces, and hazardous machinery. She should avoid work activity that requires repetitive grasping with the hands, such as assembly line work. Moderate restriction in her ability to maintain social functioning and sustain concentration, persistence, or pace, limit her to performing simple, routine, repetitive, job tasks, and to occasionally interacting with the general public.

7.    The claimant's past relevant work requires activity precluded by her residual functional capacity set forth above and she is unable to perform this work.

8.    The claimant is a younger individual, has a high school education, cannot perform her past relevant work, and has no work skills transferable to jobs with the parameters of her residual functional capacity set forth above.

9.    Based on the claimant's age and education, her vocational profile and residual functional capacity as set forth in the body of this decision, and considering the vocational expert's testimony, Section 404.1569 of Regulations Part 404, and Rule 202.21, Table No. 2, Appendix 2, Subpart P, Regulations Part 404, warrant a conclusion of "not disabled."

10.   The claimant has not been disabled as defined in the Social Security Act at any time through at least the date of this decision.

(Doc. 6, at 29-30). Thus, the ALJ concluded that Plaintiff was not entitled to disability

benefits.

On appeal to this court, Plaintiff maintains that the ALJ erred: 1) by improperly

assessing Plaintiff's credibility; 2) by failing to develop medical evidence regarding

chronic pain; 3) by failing to properly consider and evaluate the claimant's disability under a "combination of impairments" listing; and 4) by rejecting the opinion of Plaintiff's treating physicians.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion .

4

. . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v.  Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

In this case, Plaintiff alleges that errors at the third and fifth steps of the sequential analysis require this Court to reverse the Commissioner's decision and

award benefits. Plaintiff argues that the ALJ erred at the third step by failing to find that her impairments, in combination, met or equaled a Listing that entitled her to a presumption of disability. Both as alleged errors at the third step of the sequential analysis, and as separate errors in the context of the fifth step, Plaintiff also argues that the ALJ incorrectly assessed her credibility, failed to develop the record concerning her chronic pain, and improperly rejected the opinions of her treating physicians. As the Defendant observes, all four of Plaintiff's separately alleged errors closely relate to the ALJ's rejection of two functional capacity assessments made by one of Plaintiff's treating physicians, Dr. Loren Ledford. Therefore, that error will be addressed first.

**B. The ALJ's Rejection of Treating Physicians' Opinions**

The Social Security regulation pertinent to evaluation of a treating physician's opinion states: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. § 404.1527(d)(2)(emphasis added). In determining the weight to give to any medical source opinion, an ALJ must also consider: 1) the examining relationship between the medical source and claimant; 2) the treatment relationship, including the length of treatment, frequency of examination, and nature and extent of relationship; 3) support by medical evidence; 4) consistency of the opinion with the record as a whole; 5) the source's area of specialization; and 6) any other factors which support or contradict the opinion. *Id.*

### 1. Dr. Loren Ledford

As stated, Plaintiff's chief complaint in this case is that the ALJ rejected two functional capacity assessments completed by her long-standing primary care physician, Dr. Ledford.  However, where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions.  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); *accord Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-31 (6th Cir. 1990)(affirming finding of non-disability despite herniated disc and degenerative arthritis in the spine).  Similarly, although "[g]enerally the opinions of treating physicians are given substantial, if not controlling, deference," they are only given such deference when the opinions are supported by objective medical evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Thus, "if the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *see also* 20 C.F.R. § 1527(d)(2).

Dr. Loren Ledford, M.D., has been Plaintiff's primary care physician since October 1999.  (Doc. 6-2 at 60).  Over the years, Dr. Ledford has diagnosed Plaintiff with systemic lupus erythematosus ("SLE"), rheumatoid arthritis ("RA"), major depression, and degenerative disc disease.  (Doc. 6-1 at 98).  However, a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual.  *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir. 1990); *Wallace v. Astrue*, 2009

WL 6093338 at *8 (6th Cir. December 1, 2009). Therefore, it is Dr. Ledford's assessment of Plaintiff's limitations, and not her list of diagnoses, that is most important.

On April 16, 2007[1] Dr. Ledford stated in a report completed for the Social Security Administration that, although Plaintiff has never required surgical intervention for any ailment, her symptoms have "worsened over time" and her response to medication therapy has been "fair- poor." (Doc. 6-1 at 98-99). Dr. Ledford's April 16, 2007 assessment was the first of two that she completed; a second was completed in December, 2008. Both opinions were largely rejected by the ALJ.

In her April 2007 report, Dr. Ledford opined that Plaintiff was "unable to maintain gainful employment because of severe pain, fatigue, joint swelling, depressed mood, [and] poor concentration." More equivocally, Dr. Ledford also opined that Plaintiff's medications "may interfere" with her ability to work. (*Id.* at 99). However, in response to a question on the same form asking the physician to "describe in detail all pertinent findings on clinical examination (with dates) related to the patient's condition," Dr. Ledford listed only "rash," "Joint pain & swelling" and "depressed mood," with a further notation that the latter two items were "severe at times." (*Id.*).

After carefully reviewing Dr. Ledford's clinical records, the Administrative Law Judge attributed "little weight" to her April 2007 evaluative opinion:

> She described clinical findings of rash, joint pain and swelling, severe at time [sic], and depressed mood, with medication compliance but fair to poor response to therapy. A treating physician's opinion may be rejected when it is largely based on subjective complaints or information presented by the claimant and not shown to be supported by laboratory and clinical

---

[1] The report in the administrative record is signed April 16, 2007 but is inexplicably referred to by the ALJ as dating from "March 2007." No similar report by Dr. Ledford exists in the administrative record submitted to this Court; therefore, Dr. Ledford's first report will be referred to by its correct April date.

testing and the doctor's physical examination of the claimant.  Although the records show the complaints and symptoms outlined in Dr. Ledford's opinion, a claimant is not entitled to disability benefits simply because his or her physician states the individual is "disabled" or unable to work....The medical evidence *up to this point in time* does not reflect a severity of symptoms that would support a conclusion the claimant was totally disabled and unable to perform any gainful employment.

(Doc. 6 at 17-18)(emphasis added).

Plaintiff points to MRI studies dated in September 2007 but obviously those studies post-dated Dr. Ledford's April 2007 assessment.  More importantly, the MRI studies do not support a finding of disability, as at most they reflect "mild" findings. (Doc. 6-2 at 83-84).

A review of Plaintiff's treatment records prior to and shortly after April 2007 also supports the ALJ's rejection of Dr. Ledford's first assessment of disability.  Virtually none of Dr. Ledford's own records support such severe limitations.  For example, at least 10 records dating from 1999 through August 4, 2006, just prior to Plaintiff's claimed period of disability, reflect chronic complaints relating to arthritis and allergies (Doc. 6-2 at 56-60), fatigue and depression (Doc. 6-2 at 54-55), although Plaintiff remained employed full-time throughout that period.  Plaintiff was diagnosed with SLE in 2005 but again remained employed full-time until November 2006 (*see id.* at 54). Following her SLE diagnosis, Plaintiff began taking medication for her lupus (*id.* at 53). By August 2006, with medication adjustments, Dr. Ledford reported that she was feeling and doing "well."  (*Id.* at 51).

Plaintiff states that she became disabled due to her SLE after she was laid off from her employment in November 2006, but Dr. Ledford's notes reflect a gap in any follow-up treatment of her SLE for a period of more than 8 months, until April 16, 2007,

when she presented primarily (if not solely) for the completion of disability paperwork. (*Id.* at 50). On June 22, 2007, she saw Dr. Ledford for an increase in blood pressure (Doc. 6-2 at 4), which quickly returned to normal levels. On August 3, 2007, she returned for a routine follow-up for her blood pressure and reported that she was feeling well. (*Id.* at 48). Dr. Ledford ordered a pulmonary function test and diagnosed asthma the same month, but again on a follow-up appointment noted that Plaintiff "feels well," after managing her asthma with her "sister's albuterol inhaler." (*Id.* at 47).

In June 2007, just two months after Dr. Ledford's first assessment of disability, Plaintiff was examined by a consulting physician, Dr. Apgar, who opined that she would have no difficulty with sitting or standing, although she may have trouble with walking, lifting, pushing/pulling and with handling objects in her right hand. (Doc. 6-1 at 146-147). Although Dr. Apgar's opinion as a one-time consulting physician will not generally be attributed the same weight as that of a treating physician, it was not error for the ALJ to consider his opinion given support in the medical records for Dr. Apgar's opinion and lack of support for Dr. Ledford's April 2007 assessment.

In December 2008, Dr. Ledford completed a second questionnaire that again opined that Plaintiff suffered from severe exertional limitations, including an ability to stand and/or walk for less than one hour, and to sit for less than two hours. (Doc. 6-2 at 87). However, there is even less support for Dr. Ledford's second assessment than for her April 2007 assessment.

After April and June 2007 visits that reflected non-disabling symptoms and an August 2007 visit that reflected that Plaintiff was doing "well," Plaintiff's visits to the doctor significantly decreased. In fact, the administrative record contains no medical

records at all between September 2007 and December 2008, when Dr. Ledford completed her second assessment.

The ALJ discounted Dr. Ledford's December 2008 assessment in part because Plaintiff sought so little treatment in 2008:

> The medical records reflect, at most, infrequent treatment for the claimant's impairments throughout 2008, and there are no records of any significant decrease in her functional capacity during this time. However, in December 2008 Dr. Ledford submitted a Physical Functional Capacity Evaluation (Exhibit 19F, p.3) wherein she opined the claimant could frequently or occasionally only lift and carry less than 10 pounds, stand and/or walk less than one hour during an eight hour workday, and sit less than two hours, that she had limited ability for pushing/pulling with the upper and lower extremities, limited ability for handling, fingering, and feeling, and that she needed to avoid temperature extremes, wetness, humidity, vibration, fumes, odors, hazards, machinery, and heights. (Tr. 404).

The ALJ attributed only "slight weight" to Dr. Ledford's 2008 assessment on the basis that although it was completed in December 2008,

> the record does not reflect she rendered any significant treatment during 2008, and none of her treatment notes prior to 2008 record functional restrictions supporting the conclusions in the functional assessment....The assessment appears to reflect, in large part, the claimant's reported subjective limitations, but Dr. Ledford's prior treatment records do not record observation of this level of functional limitation. For example, Dr. Ledford's notes do not substantiate her opinion that the claimant essentially needs to lie down or be bedridden five hours during an eight hour workday, or that she can only sit and/or stand for the limited periods stated in the assessment. These would be severe functional restrictions that one would expect to have required emergent care, or noted by the claimant's treating physician in prior treatment notes. The claimant testified, for example, that she spends most of every day sitting in a chair, which is inconsistent with Dr. Ledford's opinion she can sit 15 minutes at a time for a total of only two hours.

(Doc. 6 at 19).

Although the opinions of treating physicians must be considered, ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the

Commissioner." 20 C.F.R. §404.1527(e)(2).  In addition, an ALJ may reject a treating physician's opinions, provided that he or she states "good reasons" for doing so, as required by 20 C.F.R. § 404.1527(d)(2), §1527(d)(2).  The ALJ's rejection of the two functional assessments completed by Dr. Ledford satisfies the "good reasons" requirement, and is supported by Plaintiff's medical records as a whole.  *See, e.g., Crouch v. Secretary of Health & Human Serv.*, 909 F.2d 852, 856-57 (6th Cir. 1990)(affirming Secretary's finding of non-disability and rejection of treating physician's assessment of disability, where medical records regarding plaintiff's lupus failed to demonstrate definite ongoing inflammatory signs in major joints or other objective evidence to support allegations of disabling pain).

Although most of Plaintiff's arguments relate to the two separate assessments completed by Dr. Ledford as discussed, Plaintiff also complains generally that the ALJ improperly rejected the opinions of a second treating physician, Dr. Feinberg, as well as a functional assessment performed by a consulting physician.

### 2.  Harold Feinberg, D.O.

Plaintiff's complaints as to what records of Dr. Feinberg that the ALJ failed to consider are vague and non-specific.  However, this Court's review of all of Dr. Feinberg's treatment records, dating from January 2006 to June 2007, leaves no doubt that substantial evidence exists for the ALJ's finding of non-disability.  None of Dr. Feinberg's clinical notes reflect any more than routine care for Plaintiff's chronic conditions, and frequently reflect Plaintiff's reports of improvement and denial of medication side effects.

Dr. Feinberg, D.O., was Plaintiff's treating physician at the Ashland Arthritis Center.  On initial evaluation in January 2006, during a period she was still employed, Dr. Feinberg noted that Plaintiff's predominant symptom from her previously diagnosed SLE was fatigue, and that she also reported "some intermittent knee pain for many years."  (Doc. 6-1 at 95).  Plaintiff reported that her fatigue had worsened in 2003, but had become "debilitating" since 2005.  (*Id.*).  Dr. Feinberg diagnosed "probable SLE" with rashes, ulcers and fatigue "most likely secondary to SLE," as well as osteoarthritis "primarily involving the knees," and "[p]ossible degenerative disc disease."  (*Id.* at 96).  On exam, however, he noted that Plaintiff had good functional range of motion, with no tenderness, and that all joints were "unremarkable."  (*Id.*).  Subsequent rheumatoid factor and ANA tests in February 2006 were negative.  In February Plaintiff did have pain with full extension of the right knee, but no significant joint pain.  Her primary complaint in February 2006 again was fatigue, which she described as "quite debilitating" about two days per week.  (*Id.* at 94).

On March 27, 2006, Dr. Feinberg saw Plaintiff in a follow-up visit to an emergency room visit for chest pain, although tests had ruled out cardiac involvement. Dr. Feinberg's notes reflect "increased fatigue over the past week," but otherwise resolved or very mild symptoms.  (*Id.* at 93).  Plaintiff was instructed to follow-up in one month or as needed, but she did not return until July 13, 2006.  When she returned, she again complained of persistent fatigue, as well as of intermittent knee and hand swelling.  (Id. at 92).  However, at the same visit she reported "sleeping well at night and waking rested."  (*Id.*).

13

On August 9, 2006, Dr. Feinberg noted that Plaintiff "still reports fatigue, but says that she is feeling better on MTX" with decreased rash.  (*Id.* at 91).  Dr. Feinberg switched one medication due to her report of GI upset.  (*Id.*).  At routine follow-up visits in September and December 2006, Plaintiff had "no new complaints" and denied further GI upset or any medication side effects.  (*Id.* at 90, 88).  She also reported that her pulmonary function tests revealed no problems, and she had no joint problems or effusions and no rashes.  (*Id.* at 88; see also Doc. 6-1 at 63 (normal pulmonary function results)).

At a follow-up appointment in January 2007, Plaintiff reported two weeks of increased fatigue, which Dr. Feinberg attributed to a recent infection and increased disease activity (SLE).  (*Id.* at 87).  In March 2007 Dr. Feinberg changed Plaintiff's medications due to her complaint of persistent fatigue. (*Id.* at 130).  Notes from that visit reflected that her "symptoms have completely resolved with Prednisone," and that she again denied side effects or problems from medications.  (*Id*).

Plaintiff visited Dr. Feinberg on April 23, 2007 and reported "increased fatigue over the last several days," and knee pain.  She attributed her knee pain to a recent increase in her activity level, having "taken to walking 45 minutes in the evenings."  (*Id.* at 128).  In May 2007, Plaintiff returned with complaints of fatigue, knee pain, and rashes.  (*Id.* at 127).  Dr. Feinberg prescribed bilateral knee injections of Depo Medrol.  In June 2007, Plaintiff reported increased joint and knee pain "over the last two weeks,"as well as malar rash.  (*Id.* at 126).  For the first time, she reported that her left knee hurt "all the time," although she also reported that her sleep was "improved" and

that she was feeling "more rested." (*Id.*). Records reflect that Plaintiff did not return to see Dr. Feinberg after her June 2007 visit.

In short, having reviewed all of Dr. Feinberg's clinical notes, this Court can detect no opinion or finding by Dr. Feinberg that the ALJ specifically rejected or failed to consider. Therefore, there appears to be no error.

### 3. Dr. Lundeen

At the request of her attorney, Plaintiff was also examined by non-treating physician Dr. James Lundeen, Sr., MD. By report dated January 15, 2009, Dr. Lundeen agreed fully with Dr. Ledford's opinion that Plaintiff was totally disabled. (Doc. 6-2 at 90-99). The ALJ also attributed only "slight weight" to Dr. Lundeen's functional assessment, noting that it "suffers from the same lack of corroborating clinical evidence as that of Dr. Ledford." (Doc. 6 at 19). For the reasons previously stated, the Court finds the ALJ's rejection of Dr. Lundeen's assessment to be supported by substantial evidence. The ALJ's rejection of Dr. Lundeen's opinion that Plaintiff is "totally disabled" was not error because "[u]ltimately...the determination of disability is the prerogative of the [Commissioner], not the treating physician." *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985).

### C. Development of Medical Evidence Regarding Pain

Plaintiff alleges as a separate error that the ALJ failed to adequately develop the record concerning the pain Plaintiff experiences from her various diagnoses, since pain in and of itself may be disabling. *See* 20 CFR 404.1529; *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). Plaintiff specifically faults the ALJ for "not developing the question of whether Ms. Dillon had pain or not in her knees and back," rather than simply relying

upon the opinions rendered by the consulting physicians.  Plaintiff also accuses the ALJ of failing "to fully inquire into the severe joint pain that plaintiff suffers as a result of lupus." (Doc. 7 at 12).  Last, Plaintiff argues that the ALJ erred by discounting Plaintiff's testimony that she suffers from adverse side effects from her medication.  (*Id*.).

Contrary to Plaintiff's argument, the ALJ did make determinations concerning Plaintiff's level of pain and her difficulty with her knees.  The ALJ determined that Plaintiff "clearly has difficulty with her knees, and should avoid repetitive kneeling and crawling" but also found, contrary to Plaintiff's testimony, that "the record does not document any impending need for right knee replacement, or that she would be precluded from any activity requiring her to use her knees for standing or walking, or climbing stairs." (Doc. 6 at 26).  Plaintiff points to no medical evidence in the record that undermines the ALJ's findings.

The ALJ also reviewed the medication issue, but found little or no evidence that Plaintiff had reported a multitude of adverse side-effects to her physicians on any consistent basis.  In fact, as discussed above, multiple records by Plaintiff's treating physicians reflect that she consistently denied severe side effects.  When Plaintiff did occasionally report an adverse side effect, her physicians changed her medications, evidently to good result.  Plaintiff fails to point to any medical record that supports her testimony that she is severely limited by medication side-effects, or that undermines the ALJ's finding that she was less than credible concerning that issue.

### D.  The Combined Impact of Impairments (Step 3 Error)

Plaintiff argues that the ALJ failed to consider the combined impact of all of her ailments in determining whether Plaintiff's impairments met or equaled a Listing.

16

Ironically, Plaintiff made no claim before the ALJ that her physical impairments met or equaled any listed impairment (Doc. 6 at 19), but she now alleges that her lupus, rheumatoid arthritis, degenerative disc disease, depression, asthma and carpal tunnel syndrome, in combination, entitle her to a presumptive finding of disability. (Doc. 7 at 13).

In this appeal, however, Plaintiff does not explain precisely which of the Listings she believes that her limitations equaled, nor does she point to any particular impairment or combination thereof that entitles her to a finding of disability. Plaintiff relies upon the opinion of Dr. Ledford that she is disabled, but the Sixth Circuit has held that only a physician's clinical findings, and not general opinions on disability, are relevant at step 3. *See, e.g., Land v. Sec'y of Health & Human Servs.*, 814 F.2d 241, 244-45 (6th Cir. 1986).

The ALJ specifically considered Listing 14.02 (systemic lupus erythematosus) and Listing 14.09 (inflammatory arthritis) but determined that Plaintiff's level of impairment did not fall within either Listing. The ALJ additionally referenced sections of Listing 1.00 (musculoskelatal system) prior to finding that Plaintiff's joint and/or muscle involvement did not meet the requirements of any impairment found in that category or in Listing 14.05 (polymyositis and dermatomyositis)(Doc. 6 at 19). The ALJ also determined that Plaintiff's rashes did not meet the criteria of Listing 8.00, and considered whether Plaintiff's obesity might increase the severity of Plaintiff's impairments to the extent that the combination of impairments would meet or equal a listed impairment. (*Id.*). Plaintiff does not dispute that her asthma was well controlled with inhalers, or that she had a normal pulmonary function test in November 2006.

In addition to reviewing Plaintiff's physical impairments, the ALJ closely examined Plaintiff's alleged mental difficulties,[2] noting that she did not seek treatment from any mental health professional until October 2007, having previously received modest treatment from Dr. Feinberg.  The ALJ also reviewed the consulting examination report of Dr. Deardorff, a consulting psychologist who saw Plaintiff in April 2007.  (Doc. 6 at 20-25).  Ultimately, the ALJ determined that Plaintiff's mental problems failed to meet either Listing 12.04 or Listing 12.06.

While it is clear the ALJ must consider the combined effect of Plaintiff's impairments in assessing her eligibility for disability benefits, *see Barney v. Secretary of Health and Human Services*, 743 F.2d 448, 453 (6th Cir. 1984), there is substantial evidence in the record establishing the ALJ did so in this case.  The ALJ found Plaintiff suffered from multiple impairments and analyzed each of Plaintiff's impairments after carefully considering the entire record.   The ALJ's finding that Plaintiff's combination of impairments did not meet or equal any Listing (Doc. 6 at 19) is sufficient to show that the ALJ considered the effect of the combination of impairments.  *See Loy v. Secretary of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir.1990)(per curiam)(ALJ's specific reference to the claimant's "combination of impairments" satisfied duty to consider the combined impact of impairments); *Gooch v. Secretary of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)(per curiam)(same).

### E.  Credibility Assessment and Evaluation of Pain

Last, Plaintiff argues that the ALJ erred in finding that her testimony was not

---

[2]Other than brief reference to Plaintiff's depression, Plaintiff does not contest the ALJ's extremely detailed findings concerning her mental impairments.

entirely credible.   Specifically, Plaintiff claims that the ALJ failed to consider all the

factors listed in 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p.

The ALJ found that:

In the present case, the claimant's medically determinable impairments could reasonably be expected to produce pain and other symptoms, but the severity of these symptoms, as alleged by the claimant, and the effect on the claimant's ability to work, are not fully supported by objective medical evidence alone.  The claimant testified that she can no longer perform her past work as a heavy equipment operator.  This is supported in the record.  She stated this job involved mostly sitting..but that it also involved lifting very heavy amounts of weight at times and shoveling asphalt.  The record suggests she is no longer able to perform such exertionally demanding work, and even prior to her alleged onset of disability, she was beginning to experience difficulty getting on and off her equipment due to her knee pain.

As noted above, the claimant has alleged that she is severely limited in her ability to perform even basic household chores, fasten a button or work a zipper. ...Although she is limited to a degree in her daily living activities as a result of her impairments, the record does not document the degree of symptom severity that would corroborate the significant restrictions she alleges experiencing in the performance of daily activities.  The issue is not whether the claimant has pain and symptoms, but whether these symptoms are so severe as to be disabling.  Subjective complaints are subject to being discounted if there are inconsistencies in the evidence as a whole.

(Doc. 6 at 25-26).

The ALJ also determined that Plaintiff's claims that her medications cause

"vomiting, upset stomach, fatigue, mood swings, decreased appetite, elevated blood

pressure, fluid retention, diarrhea, headaches, blurred vision, and lack of concentration"

were "less than fully credible."   (Doc. 6 at 27). The ALJ explained, "[t]here is no

evidence she reported this multitude of adverse medication side-effects to her

physicians on any consistent basis, or any findings that she has had persistent and

adverse side effects due to any prescribed medication which were incapable of being

controlled by medication adjustments or changes." (*Id.*).  In addition, "records do not reflect any physician prescription for wrist splints, cane, or other supportive device," notwithstanding Plaintiff's claims that she requires them.  (*Id.*).  Plaintiff also testified that she left her job due to her alleged disability, but on her initial application she stated that she left her job because she was "laid off."  (Doc. 6 at 165).  Based upon these and other inconsistencies, the ALJ determined that  "the claimant's testimony and subjective complaints, regarding the severity and limiting effect of her pain and other symptoms, are only partially credible."  (Doc. 6 at 27).

This determination on credibility was permissible in light of the numerous inconsistencies between the objective evidence and Plaintiff's testimony.   A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475.   However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted).  An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Further, a credibility determination cannot be disturbed "absent a compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the

medical records, her testimony, and other evidence.  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

In this case, the severity of Plaintiff's reported level of pain simply is not supported by any medical evidence.  The ALJ provided detailed reasons for discounting her credibility.  The issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).  Given the great deference to an ALJ's credibility assessment, it is clear that substantial evidence supports the ALJ's decision.

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**


*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

BRENDA S. DILLON,                                    Case No. 1:09-cv-896

        Plaintiff,                               Barrett, J.
                                                     Bowman, M.J.
   v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

22